# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:14-cv-00621-FDW-DCK

| | |
|---|---|
| **MARCUS D. THORNTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **THE ART INSTITUTE OF** ) | |
| **CHARLOTTE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Stay Judicial Proceedings and Defer to Arbitration (Doc. No. 2). Having carefully considered the motion, supporting memorandum, and the record in this case, the Court GRANTS Defendant's Motion.

## BACKGROUND

It appears to the Court that on October 8, 2014, Plaintiff filed his Complaint *pro se* in the above-captioned case in Mecklenburg County. (Doc. No. 1-1). Thereafter, on November 7, 2014, Defendant The Art Institute of Charlotte ("Defendant" or "The Art Institute") removed the case to federal court and it was referred to the undersigned. (Doc. No. 1). While unclear, Plaintiff's Complaint appears to include claims against Defendant based on violations of the Anti-Discrimination Act of 1977, Title IX: Education Amendments of 1972, Title VI of the Civil Rights Act of 1964, and numerous common law claims. (Doc. No. 1-1). According to the facts alleged by Plaintiff, Plaintiff was enrolled as a student at The Art Institute until May 17, 2012, at which time he was dismissed from the school. (Doc. No. 1-2, p. 5). Plaintiff's claims are based on events that occurred during his enrollment at The Art Institute.

On November 12, 2014, Defendant filed its Motion to Stay Judicial Proceedings and Defer to Arbitration, citing an Enrollment Agreement (the "Agreement") signed by Plaintiff in connection with his enrollment at The Art Institute. (Doc. No. 2, ¶ 1; Doc. No. 2-1). Defendant asserts that, by signing the Agreement, Plaintiff "expressly agreed to submit any and all claims arising out of or relating to his enrollment or attendance at The Art Institute to binding arbitration," and Defendant attached a copy of the Agreement to its Motion. (Doc. No. 2, ¶ 1; Doc. No. 2-1). As written, the Agreement includes an arbitration clause that states, in pertinent part:

> **Arbitration**
> You and The Art Institute agree that any dispute or claim between you and The Art Institute, or any of its officers, directors, trustees, employees or agents) arising out of or relating to this Enrollment Agreement or, absent such policy, your enrollment or attendance at The Art Institute, whether such dispute arises before, during, or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be, at your or The Art Institute's election, submitted to and resolved by individual binding arbitration pursuant to the terms described herein.

(Doc. No. 2-1). Defendant contends that the arbitration clause within the Agreement is enforceable under the Federal Arbitration Act (the "FAA"). (Doc. No. 3). The Court notes that the deadline for Plaintiff to respond to Defendant's Motion has passed, and as of the date of this Order, Plaintiff has filed no such response.

## DISCUSSION

The FAA mandates the enforcement of arbitration agreements where such agreements (1) are valid under general principles of contract law and (2) are part of a contract or transaction involving interstate commerce. See 9 U.S.C. § 2. Moreover, when an enforceable arbitration agreement exists, and the issues in the dispute fall within its scope, a federal district court must stay the proceedings on a party's motion to compel when the other has "failed, neglected, or

refused to comply with an arbitration agreement." Gilmer v. Interstate /Johnson Lane Corp., 500 U.S. 20, 25 (1991) (citing 9 U.S.C. §§ 3, 4); see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) ("A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.").

It appears to the Court that the arbitration agreement at issue is valid and enforceable under general principles of North Carolina contract law. Plaintiff signed the unambiguous Agreement, which includes the arbitration clause, representing he agreed to and understood its terms. (Doc. No. 2-1). Additionally, no questions have been raised as to the application of the FAA in this case based on preliminary issues of the existence of a written agreement between the parties and a transaction involving interstate commerce. Therefore, the FAA governs the Agreement between the parties in this case.

As previously noted, Plaintiff's Complaint alleges numerous common law claims, as well as violations of federal statutes. (Doc. No. 1-1). Plaintiff's allegations specifically relate to Plaintiff's former enrollment at The Art Institute. (Doc. No. 1-1). Consequently, the specific issues in the dispute at hand relate to Plaintiff's enrollment and/or termination of enrollment and clearly fall within the scope of the arbitration clause in the Agreement. Additionally, Plaintiff will not be prejudiced by enforcement of the arbitration clause because the litigation is only in its beginning stages, and neither party has yet expended significant amounts of time or money.

Plaintiff's clear, written and signed Agreement with Defendant to resolve disputes related to his enrollment at The Art Institute through binding arbitration fully satisfies the requirements of North Carolina law for enforceable arbitration agreements. Moreover, the clause is valid under the requirements for compelling arbitration under the FAA.

Accordingly, Defendant's Motion to Stay Judicial Proceedings and Defer to Arbitration is GRANTED. The parties are ORDERED to proceed to arbitration and submit reports to the Court every ninety (90) days. The dispute must be resolved within six (6) months from the date of this Order. Failure to do so will result in Court action.

IT IS SO ORDERED.

Signed: December 3, 2014

Frank D. Whitney
Chief United States District Judge